**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE 1 AND JANE DOE 2, ) | Case No.: 13-CV-03376-LHK |
| ) | |
| Plaintiffs, ) | |
| ) | ORDER GRANTING DEFENDANT'S |
| v. ) | MOTION TO DISMISS PLAINTIFF'S |
| ) | COMPLAINT WITHOUT PREJUDICE |
| SUCCESSFULMATCH.COM, a California ) | AND DENYING DEFENDANT'S |
| Corporation, ) | MOTION TO STRIKE |
| ) | |
| Defendant. ) | |
| ) | |

Before the Court is Defendant Successfulmatch.com's ("Defendant") Motion to Dismiss Plaintiffs' Complaint or, in the Alternative, to Strike Class Allegations. ECF No. 16 ("Mot."). Plaintiffs Jane Doe 1 and Jane Doe 2 (collectively "Plaintiffs") oppose the motion, ECF No. 20 ("Opp."), and Defendant has filed a Reply, ECF No. 21 ("Reply"). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing regarding this motion scheduled for April 17, 2014, at 1:30 p.m. The Case Management Conference scheduled for April 17, 2014, at 1:30 p.m. remains as set. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Defendant's Motion to Dismiss without prejudice, and DENIES Defendant's Motion to

1

Strike Class Allegations for the reasons below.

## I. BACKGROUND

### A. Plaintiffs' Factual Allegations

Plaintiff Jane Doe 1, a Canadian resident, and Plaintiff Jane Doe 2, a Washington resident, filed a putative class action complaint on July 19, 2013 against Defendant Successfulmatch.com, a California corporation that operates a variety of dating sites. ECF No. 1 ("Compl.") ¶¶ 1, 4-6. Among the dating sites Defendant operates is PositiveSingles.com, which is marketed to persons with sexually transmitted diseases ("STDs"). Compl. ¶ 1. PositiveSingles.com is designed to help people with STDs meet others who are similarly situated or accepting of members' medical conditions. *Id.*

PositiveSingles.com allows members to register and create a profile on the site for free. *Id.* ¶ 12. If a member decides to use only a free membership, their profile is anonymous. *Id.* ¶ 15. However, PositiveSingles.com also offers paid memberships, and paid subscribers can disclose more information on their profiles and add a picture. *Id.* PositiveSingles.com's home page asks, "Do you wish there was a place where you didn't have to worry about being rejected or discriminated? This is a warm-hearted and exclusive community for singles and friends with STDs." *Id.* ¶ 11. The home page contains a button with the phrase "Join for Free" and a link that states "Totally Free to Place a Fully Anonymous Profile." Both the button and the link take a potential member to the PositiveSingles.com registration page. *Id.* ¶ 12.

The registration page states that PositiveSingles.com is a "100% Confidential and Comfortable Community," and that "[i]t's absolutely FREE to try out PositiveSingles.com. . . . We do not disclose, sell, or rent any personally identifiable information to any third party organizations." *Id*. ¶¶ 13-14. The registration page asks members to provide their first name, email address, age, ethnicity, height, gender, gender of desired partner, location, and their medical condition. ECF No. 17 ("RJN"), Ex. 1B. At the bottom of the registration page, there is a button that states "Continue and Have Fun," which creates the profile. RJN Ex. 1B. Just above the "Continue and Have Fun" button is a checkbox that states "I am 18+ and have read and agree to the Service Agreement and Privacy Policy," which links to the Service Agreement (titled "Terms &

2

Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND DENYING DEFENDANT'S MOTION TO STRIKE

1   Conditions of Service") and Privacy Policy. RJN Ex. 1A, 1B; Comp. ¶ 16. The Terms &

2   Conditions of Service state: "To expand the availability of profiles on SuccessfulMatch sites,

3   profiles *may* be shared with other sites within the SuccessfulMatch network. By posting or

4   maintaining a profile on this or any other SuccessfulMatch Network site, you agree and consent

5   that said profile shall be subject to placement on other SuccessfulMatch Network sites, at the

6   discretion of SuccessfulMatch, without further notice." RJN Ex. 1A.3 (emphasis added).

7          In addition to operating its own dating websites, Defendant allows its customers (called

8   "affiliate partners") to create new online dating websites for niche audiences. Specifically, these

9   affiliate partners contract with the Defendant, and Defendant provides affiliate partners with a

10  domain name, a site, and Defendant's central membership database. Compl. ¶¶ 17, 19. Defendant's

11  network of affiliated sites serve a diverse set of communities and have domain names such as

12  Blackpoz.com, HivAidsDating.com, HIVGayMen.com, AllLifestyle4BBW.com, and

13  ChristianSafeHaven.com, among others. *Id.* ¶ 2. Because Defendant managed a single database of

14  member information for all of its sites, a member who registered with an affiliate site could view

15  the profile information of a PositiveSingles.com member. *Id.* Therefore, the profile of that member

16  who registered for PositiveSingles.com could be viewed by members of not only

17  PositiveSingles.com, but also by members of the various affiliated sites. *Id.*; Compl. Exs. A-C.

18         Plaintiffs' critical allegation is that Defendant fraudulently and deceptively failed to

19  disclose that profiles created through PositiveSingles.com could be viewed on Defendant's affiliate

20  dating sites. Plaintiffs allege that to users, PositiveSingles.com appears to be a stand-alone website.

21  Compl. ¶ 22. Plaintiffs contend that Defendants induced consumers to sign up for their dating

22  service by misrepresenting the privacy of their information with statements such as "100%

23  Confidential and Comfortable Community" and "[Defendant does] not disclose, sell or rent any

24  personally identifiable information to any third party organizations." Compl. ¶¶ 13-14. Plaintiffs

25  further assert that even if members were generally aware of the existence of Defendant's affiliate

26  sites, it is not possible for a member to determine exactly how many and what type of sites are

27  associated with PositiveSingles.com. Compl. ¶ 23.

28

3

Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND DENYING DEFENDANT'S MOTION TO STRIKE

**B.     Procedural History**

Plaintiffs filed their Complaint on July 19, 2013. ECF No. 1. In their Complaint, Plaintiffs allege two causes of action. Plaintiffs allege that Defendant has violated multiple provisions of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq*. Compl. ¶¶ 41-52. Plaintiffs also allege that Defendant has violated the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, which is predicated in part upon the violations of the CLRA. *Id.* ¶¶ 32-40. Plaintiffs seek to bring this putative class action on behalf of the following proposed class:

> All persons who registered for use of the PositiveSingles.com website or any other website indicating that it was "Powered by PositiveSingles.com" during the four year period prior to the filing date of this Complaint, excluding residents of California.

*Id.* ¶ 26. The instant case follows a similar suit brought against Defendant in Santa Clara County Superior Court, *John Doe v. PositiveSingles.com et al.*, 111-CV-211208.[1] *See* RJN. The plaintiff in that case brought claims on behalf of a class of California residents who registered with PositiveSingles.com or any of Defendant's affiliate sites. *Id.* at 7. Here, in contrast, Plaintiffs seek redress for non-California users of Defendant's services.

On December 2, 2013, Defendants filed the instant Motion to Dismiss, as well as a Request for Judicial Notice to include filings from *John Doe v. PositiveSingles.com et al*. *See* Mot; RJN.[2]

---

[1] In *John Doe*, the Superior Court overruled Defendant's demurrer, denied Defendant's motion for summary judgment, and granted class certification. *See* ECF No. 20-1.

[2] While a district court generally may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion, a court may take judicial notice of documents referenced in the complaint, as well as matters in the public record, without converting a motion to dismiss into one for summary judgment. *See Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001). A matter may be judicially noticed if it is either "generally known within the territorial jurisdiction of the trial court" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Proper subjects of judicial notice when ruling on a motion to dismiss include pleadings in other relevant proceedings. *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007). Defendant requests that the Court take judicial notice of the complaint and supporting exhibits filed in *John Doe v. PositiveSingles.com*, a proceeding in Santa Clara County Superior Court alleging identical UCL and CLRA violations against Defendant on behalf of a different class. RJN at 2. Plaintiff does not oppose Defendant's request and introduces several orders issued in *John Doe* in support of its Opposition. Opp. at 1-2. In accordance with the principles discussed above, the Court GRANTS Defendant's Request for Judicial Notice. The Court also takes judicial notice of the Orders in *John Doe* that Plaintiffs have provided. *See* ECF No. 20-1.

4

Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND DENYING DEFENDANT'S MOTION TO STRIKE

Plaintiffs filed their Opposition on December 16, 2013, *see* Opp., and Defendants filed a Reply on December 23, 2013, *see* Reply.

## II.     LEGAL STANDARD

### A.     Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and a "court may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). A court is also not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks and citation omitted).

### B.     Rule 9(b)

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (allegations of fraud must include "the who, what, when, where, and how" of the misconduct charged). Thus, claims sounding in fraud must allege "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted). The plaintiff must set forth "what is false or misleading about a statement, and why it is false." *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001).

### C.     Rule 12(f)

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation . . . . If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citations omitted). "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Id.* "Ultimately, whether to grant a motion to strike

6
Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND DENYING DEFENDANT'S MOTION TO STRIKE

lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon*, No. 12-846, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

### D.     Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted). Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alterations in original).

## III.    MOTION TO DISMISS

Defendant seeks to dismiss Plaintiffs' Complaint on a number of grounds, including failure to allege reliance or harm as required by the UCL and CLRA; failure to allege a claim under any specific prong of the UCL; lack of duty to disclose; and lack of actionable misrepresentation or omission. Mot. at 4-16; Reply at 1-2. For the reasons stated below, the Court finds that Plaintiffs have failed to allege reliance and injury in fact for their UCL and CLRA claims. Because reliance and injury are essential elements of both of Plaintiffs' causes of action, the Court grants the Motion to Dismiss in full and declines to address Defendant's remaining bases for dismissal. The Court begins by discussing the legal standard for reliance and injury under the UCL and CLRA and then applies those standards to the allegations in the Complaint.

### A.     Legal Standard

The UCL broadly prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The CLRA prohibits a host of unfair and deceptive practices,

7
Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND DENYING DEFENDANT'S MOTION TO STRIKE

including various forms of misrepresentation. *See* Cal. Civil Code § 1770. Both the UCL and the CLRA prohibit not only affirmative misrepresentations, but also material omissions that deceive reasonable consumers. In the instant case, Plaintiffs contend that Defendant has violated the unfair and fraudulent prong of the UCL through both affirmative misrepresentations regarding the privacy of users' profiles on PositiveSingles.com and through the omission of material facts regarding the sharing of information across the various SuccessfulMatch affiliate websites. In addition, Plaintiffs contend that through these same misrepresentations and omissions, Defendant has violated the CLRA. Plaintiffs finally contend that Defendant has violated the unlawful prong of the UCL, which incorporates violations of other statutes, because Defendant has violated the CLRA.

Both the CLRA and the UCL require Plaintiffs to demonstrate standing. A plaintiff may bring a claim under the CLRA so long as she "suffer[ed] any damage as a result of" a proscribed practice under the CLRA. Cal. Civ. Code § 1780(a). This means that to adequately plead a CLRA claim, a plaintiff must allege that she relied on the defendant's alleged misrepresentation and that she suffered economic injury as a result. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010).

Likewise, to establish standing under the UCL, a plaintiff must demonstrate that she "suffered injury in fact and [ ] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.[3] Interpreting this statutory language, California courts have held that when the "unfair competition" underlying a plaintiff's UCL claim consists of a defendant's misrepresentation, a plaintiff must have actually relied on the misrepresentation, and suffered economic injury as a result of that reliance, to have standing to sue. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009). California courts have subsequently extended the actual reliance requirement to claims brought under the UCL's unlawful prong to the extent "the predicate unlawful conduct is based on misrepresentations." *Durell*, 183 Cal. App. 4th at 1355; *accord Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011). Moreover, in *Kwikset Corp. v.*

---

[3] A plaintiff who has standing under the UCL's "lost money or property" requirement will have suffered the requisite "damage" for purposes of establishing CLRA standing. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013).

8

Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND DENYING DEFENDANT'S MOTION TO STRIKE

*Superior Court*, the California Supreme Court suggested that the actual reliance requirement applies whenever the underlying misconduct in a UCL action is fraudulent conduct. *See* 51 Cal.4th 310, 326 (2011). In line with this authority, this Court has concluded "that the actual reliance requirement also applies to claims under the UCL's unfair prong to the extent such claims are based on fraudulent conduct." *See Kane v. Chobani, Inc.*, No. 12-2425, 2013 WL 5289253, at *6 (N.D. Cal. Sept. 19, 2013). Accordingly, this Court has consistently required allegations of actual reliance and injury at the pleading stage for claims under all three prongs of the UCL where such claims are premised on misrepresentations. *See Kane v. Chobani, Inc.*, No. 12-2425, 2014 WL 657300, at *5 (N.D. Cal. Feb. 20, 2014).

This showing of actual reliance under the UCL requires a plaintiff to allege that "the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." *Tobacco II*, 46 Cal. 4th at 326 (internal quotation marks omitted). "A plaintiff may establish that the defendant's misrepresentation is an immediate cause of the plaintiff's conduct by showing that in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." *Id.* (internal quotation marks omitted). While a plaintiff need not demonstrate that the defendant's misrepresentations were "the sole or even the predominant or decisive factor influencing his conduct," the misrepresentations must have "played a substantial part" in the plaintiff's decision-making. *Id.*

For a plaintiff to bring UCL and CLRA claims on the basis of omissions, the omission must either be "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 925 (N.D. Cal. 2012) (quoting *Baltazar v. Apple, Inc.*, 10-3231, 2011 WL 588209, at *4 (N.D. Cal. Feb. 10, 2011)). The California Court of Appeal has held that there are four circumstances in which a failure to disclose a fact can constitute fraud or deceit:

> (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.

9
Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND DENYING DEFENDANT'S MOTION TO STRIKE

*Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011). To establish the causal nexus between the omission and a plaintiff's harm, a plaintiff must plead that she would not have purchased the product or service at issue if she had known the material fact that Defendant allegedly omitted. *See Kwikset*, 51 Cal. 4th at 327; *Donohue*, 871 F. Supp. 2d at 920.

Here, the gravamen of Plaintiffs' claims under the UCL and CLRA is that Defendants fraudulently misrepresented the confidentiality of member information by omitting the fact that members' profiles are replicated on Defendants' network of affiliate sites. Compl. ¶¶ 20-22. This omission induced individuals with STDs—who have a strong interest in keeping their medical information private—to sign up for Defendant's dating service. *Id.* ¶¶ 1, 11. To demonstrate standing under the UCL and CLRA under this theory, Plaintiffs must allege that they actually relied on Defendant's misrepresentations and suffered economic injury as a result of that reliance.

**B.     Reliance**

Defendant argues that Plaintiffs have not alleged that they viewed or relied on any of the alleged misrepresentations on the PositiveSingles.com website. Mot. at 10, 15. The Court agrees for the reasons stated below.

The Complaint and supporting exhibits describe different representations made on the PositiveSingles.com homepage and registration page, such as "100% Confidential and Comfortable Community," "This is a warm-hearted and exclusive community for singles and friends with STDs," "We care about your privacy more than other sites," and "We do not disclose, sell or rent any personally identifiable information to any third party organizations." *Id.* ¶¶ 11-13; RJN Ex. B. The registration page also requires clicking a box that states "I am 18+ and I have read and agree to the Service Agreement and Privacy Policy." RJN Ex. B.

The Complaint lacks allegations of what, if any, purported misrepresentations the two named Plaintiffs, Jane Doe 1 and Jane Doe 2, actually read. Plaintiffs have failed to specifically allege that they saw any of the statements that they claim are misleading, or how the website statements impacted their decisions to register with Defendant's website. Plaintiffs' generalized allegations that Defendants "preyed on the vulnerability of the members of the public that tested

10

Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND DENYING DEFENDANT'S MOTION TO STRIKE

1    positive for STDs" and that Defendants "lured [members] in with empathetic sounding statements"

2    are insufficient to meet the pleading requirement. Rather, Plaintiffs must, at a minimum, allege that

3    they actually viewed the representations that they now contend are misleading. Furthermore,

4    Plaintiffs have not pleaded any facts to meet the "but for" test for fraudulent omissions, as they

5    have failed to allege how knowledge of Defendant's omissions about affiliated sites would have

6    impacted Plaintiffs' decision to register for PositiveSingles.com. *See Donohue*, 871 F. Supp. 2d at

7    920.

8         Beyond pointing to general statements about Defendant's conduct, Plaintiffs rely on *In re

9    Steroid Hormone Prods. Cases*, 181 Cal. App. 4th 145 (2010), and *McAdams v. Mornier, Inc.*, 182

10   Cal. App. 4th 174 (2010), for the proposition that in cases involving omissions, an allegation that

11   the omission is material is sufficient without any independent allegation of reliance. Opp. at 9-10.

12   Plaintiffs' citation to these cases is unavailing. These cases address the actual reliance requirements

13   of unnamed class members, not named plaintiffs, in UCL class actions premised on fraudulent

14   misrepresentations. *Steroid Hormone*, 181 Cal. App. 4th at 157; *McAdams*, 182 Cal. App. 4th at

15   182. Neither case purports to excuse named plaintiffs from the pleading requirements necessary to

16   establish standing under the UCL and CLRA. *See Steroid Hormone*, 181 Cal. App. 4th at 154

17   ("While a named plaintiff in a UCL class action now must show that he or she suffered injury in

18   fact and lost money or property as a result of the unfair competition, once the named plaintiff meets

19   that burden, no further individualized proof of injury or causation is required to impose restitution

20   liability against the defendant in favor of absent class members."); *McAdams*, 182 Cal. App. 4th at

21   189 ("[O]nly the representative plaintiff need meet the [standing] requirement."). In fact, *Steroid

22   Hormone* makes clear that the named plaintiff pleaded the "but for" allegations necessary in

23   omissions cases.[4] 181 Cal. App. 4th at 150 ("[Plaintiff states he] would not have purchased those

24   products had he known they were illegal to possess without a prescription."). The Complaint in the

25   instant case lacks similar allegations that the named Plaintiffs would not have purchased a product

---

[4] *McAdams* remanded the case to the trial court for a determination of the named plaintiff's standing under the UCL, and thus does not discuss standing allegations explicitly. 182 Cal. App. 4th at 192.

11

Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND DENYING DEFENDANT'S MOTION TO STRIKE

1 or service if the omissions had been disclosed.

2 Accordingly, the Court is not persuaded that Plaintiffs have pleaded the facts necessary to
3 allege reliance on Defendant's alleged misrepresentations and omissions and GRANTS
4 Defendant's Motion to Dismiss on this basis. Because this appears to be a pleading deficiency and
5 not due to implausibility of the facts alleged, the Court grants Plaintiffs leave to amend the
6 Complaint to cure this deficiency.

7 **C.     Economic Injury**

8 Defendant also contends that it is unclear from the Complaint whether Plaintiffs suffered
9 any injury and that Plaintiffs have not alleged that they were actually members of
10 PositiveSingles.com or that they paid for subscriptions. Mot at 3 n.1, 15. For the reasons stated
11 below, the Court agrees with Defendant.

12 The Complaint states that initial registration with PositiveSingles.com is free and
13 anonymous, consistent with Defendant's representations on its website. See Compl. ¶¶ 12, 15; RJN
14 Ex. 1B. Members who elect to purchase paid subscriptions can post pictures on their profile and
15 disclose more information than members who do not pay for a membership. Compl. ¶ 15. The
16 Complaint's accompanying exhibits are screenshots of one of Plaintiff's profiles on different
17 affiliate sites, such as Blackpoz.com, HivAidsDating.com, and HIVGayMen.com, and the profiles
18 all include a picture, suggesting that at least one of the named Plaintiffs had a paid membership.
19 Exs. A-C. The picture appears to be the same in each profile, and each profile indicates the
20 member's "status" as "Recommended/Gold Member . . . PositiveSingles.com/ SuccessfulMatch."
21 *See id.*

22 Interpreted in a light most generous to the Plaintiffs, the Complaint and accompanying
23 exhibits support the inference that either Jane Doe 1 or Jane Doe 2 was a paid member of
24 PositiveSingles.com. However, Plaintiffs do not specify whose profile is shown in the Complaint
25 exhibits, nor does the Complaint specify whether the other named Plaintiff signed up for
26 PositiveSingles.com. Moreover, the Complaint does not even make clear that either Plaintiff
27 registered with PositiveSingles.com directly. Rather, it is equally possible that the Plaintiff whose

28

12
Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND DENYING
DEFENDANT'S MOTION TO STRIKE

profile appears as attachments to the Complaint registered for one of the other affiliated sites.[5] Because the crux of Plaintiffs' theory of harm stems from misrepresentations and omissions made on PositiveSingles.com home page and registration page, it follows that Plaintiffs should identify with particularity on which of Defendants' sites Plaintiffs registered. *See Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."). Plaintiffs have not done so here.

Most importantly, Plaintiffs also fail to make clear that they suffered any economic injury as a result of Defendant's conduct. Plaintiffs again point to generalized statements to address this pleading deficiency, but conclusory allegations such as "Plaintiffs and the Class have suffered injury in the form of actionable losses of money," without anything explicit about how those losses were sustained, is insufficient to satisfy the pleading requirements.

Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' Complaint for failure to allege with particularly the economic injury sustained as a result of Defendant's conduct. Again, the problem appears to be more a pleading deficiency than a lack of plausibility. Because this deficiency could be cured by clearer factual allegations regarding how Plaintiffs suffered economic damages, the Court grants Plaintiffs leave to amend.

## IV. MOTION TO STRIKE

Defendant moves to strike Plaintiff's nationwide class allegations. Mot. at 16-18; Reply at 3. Specifically, Defendant asserts that Plaintiffs' claims on behalf of the nationwide class must be stricken because California's choice-of-laws analysis, articulated in *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), prohibits the application of California's consumer protection laws to non-California plaintiffs in this case. *See* Mot. at 16-17. Plaintiffs respond by noting that Defendant's Terms of Service require the application of California law in governing disputes between PositiveSingles.com members and Defendant. Opp. at 15. Plaintiffs also argue that a choice-of-law analysis must be made on a developed factual record, and not on a motion to dismiss. *Id.* at 16. For the reasons stated below, the Court agrees with Plaintiffs as to the latter

---

[5] It is not clear that the named Plaintiff whose profile pages are not attached to the Complaint registered for *any* Defendant website or affiliated website.

13

Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND DENYING DEFENDANT'S MOTION TO STRIKE

point, and need not make a determination as to the applicability of Defendant's choice-of-law provision at this stage.

In *Mazza*, a putative class of plaintiffs sued Honda for violations of the UCL, California's False Advertising Law ("FAL"), and CLRA in connection with Honda's marketing of its "Collision Mitigation Braking System." 666 F.3d at 586-87. The Ninth Circuit reversed the district court's certification of a nationwide class after concluding that, "[u]nder the facts and circumstances of this case," California's choice-of-law rules dictated that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id.* at 594.

Here, the Court finds that striking the nationwide class allegations at this stage of the case would be premature. The Ninth Circuit's opinion in *Mazza*—which was decided at the class certification stage and not on a motion to dismiss—depended heavily on a detailed choice-of-law analysis that compared how various states' consumer protection laws applied to the facts of the plaintiffs' claims. *See id*. at 589-94. By contrast, the briefing at the instant stage of litigation lacks the detail necessary to conduct this analysis. Defendant—who bears the burden of demonstrating "that foreign law, rather than California law, should apply to class claims" in a California choice-of-law analysis, *Washington Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906, 921 (2001)—provides no support for Defendant's position that foreign law conflicts with California law, let alone that this conflict is so severe as to preclude applying California law to Plaintiffs' class claims. Absent the sort of detailed choice-of-law analysis that guided the Ninth Circuit in *Mazza*, the Court declines to evaluate how California's choice-of-law rules affect Plaintiffs' class claims at this time. This conclusion is in accord with this Court's decision in *Brazil v. Dole Food Co.*, No. 12-1831, 2013 WL 5312418, at *11 (N.D. Cal. Sept. 23, 2013), as well as the decisions of numerous other courts within the Ninth Circuit, which have declined, even after *Mazza*, to conduct the choice-of-law analysis at the pleading stage, *see Werdebaugh v. Blue Diamond Growers*, No. 12-2724, 2013 WL 5487236, at *16 n.9 (N.D. Cal. Oct. 2, 2013) (collecting cases).

14
Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND DENYING DEFENDANT'S MOTION TO STRIKE

Accordingly, the Court DENIES Defendant's Motion to Strike Plaintiffs' nationwide class claims.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS with leave to amend Defendant's Motion to Dismiss, on the basis that Plaintiffs failed to plead the reliance and injury necessary to state a claim. The Court DENIES Defendant's Motion to Strike Plaintiff's Class Allegations. If Plaintiffs wish to file an amended complaint addressing the deficiencies identified in this Order, Plaintiffs must do so within 21 days of this Order. Plaintiffs may not add new claims or parties without seeking Defendant's consent or leave of the Court pursuant to Federal Rule of Civil Procedure 15. Plaintiffs' failure to file an amended complaint within 21 days of this Order or failure to cure the deficiencies in this Order will result in a dismissal of this case with prejudice.

**IT IS SO ORDERED.**

Dated: April 16, 2014

_____
LUCY H. KOH
United States District Judge