UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE 1 AND JANE DOE 2, | Case No.: 13-CV-03376-LHK |
| Plaintiffs, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND |
| v. | |
| SUCCESSFULMATCH.COM, a California Corporation | |
| Defendant. | |

Plaintiffs Jane Doe 1 and Jane Doe 2 (collectively, "Plaintiffs") bring this First Amended Complaint, a putative class action on behalf of themselves and others similarly situated against Defendant SucccessfulMatch.com ("Defendant") for violations of California's Unfair Competition Law ("UCL") and California's Consumer Legal Remedies Act ("CLRA"). ("FAC"), ECF. No. 29. Before the Court is Defendant's motion to dismiss Plaintiffs' First Amended Complaint. ("Mot."), ECF No. 41. Plaintiffs opposed the motion. ("Opp."), ECF No. 44. Defendant replied to the opposition. ("Reply"), ECF No. 46. Defendant also requests judicial notice of a complaint filed in a parallel California state class action case, 111-CV-2111208, against Defendant for the same causes of action. ("RJN"), ECF No. 42. Having considered the submissions of the parties and the

1

Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

relevant law, the record in this case, and for good cause shown, the Court hereby GRANTS Defendant's motion to dismiss for the reasons stated below.

## I.     BACKGROUND

### A.  Plaintiffs' Factual Allegations

Plaintiff Jane Doe 1, a Canadian resident, and Plaintiff Jane Doe 2, a Washington resident, filed their FAC on May 1, 2014, against Defendant SuccessfulMatch.com, a California corporation that operates a variety of dating sites. FAC ¶¶ 1, 4–6. Among the dating sites Defendant operates is PositiveSingles.com, which is marketed to persons with sexually transmitted diseases ("STDs"). FAC ¶ 1. PositiveSingles.com is designed to help people with STDs meet others who are similarly situated or accepting of members' medical conditions. *Id.*

PositiveSingles.com allows members to register and create a profile on the site for free. *Id.* ¶ 12. If a member decides to use only a free membership, her profile is anonymous. *Id.* ¶ 15. PositiveSingles.com also offers paid memberships, and paid subscribers can disclose more information on their profiles and add a picture. *Id.* PositiveSingles.com's home page asks, "Do you wish there was a place where you didn't have to worry about being rejected or discriminated? This is a warm-hearted and exclusive community for singles and friends with STDs." *Id.* ¶ 11. The home page also states: "We care about your **privacy** more than other sites . . . ." *Id.* The home page contains a button with the phrase "Join for Free." A link on the home page states: "Totally Free to Place a Fully Anonymous Profile." Both the button and the link take a potential member to the PositiveSingles.com registration page. *Id.* ¶ 12.

The registration page states that PositiveSingles.com is a "100% Confidential and Comfortable Community," and that "[i]t's absolutely 100% FREE to try out PositiveSingles . . . . We do not disclose, sell, or rent any personally identifiable information to any third party organizations." *Id.* ¶¶ 13–14. The registration page asks members to provide their first name, a username and password, email address, age, ethnicity, height, gender, gender of desired partner, location, and their medical condition. RJN Ex. 1B. At the bottom of the registration page, there is a button that states "Continue and Have Fun," which creates the profile. RJN Ex. 1B. Just above the "Continue and Have Fun" button is a checkbox that states "I am 18+ and have read and agree to

2

the Service Agreement and Privacy Policy" which links to the Terms & Conditions of Service Agreement and Privacy Policy on another page. RJN Ex. 1A; FAC ¶ 16. The Terms & Conditions of Service state: "To expand the availability of profiles on SuccessfulMatch sites, profiles *may* be shared with other sites within the SuccessfulMatch network.  By posting or maintaining a profile on this or any other SuccessfulMatch Network site, you agree and consent that said profile shall be subject to placement on other SuccessfulMatch Network sites, at the discretion of SuccessfulMatch, without further notice." RJN Ex. 1A.3; FAC Ex. D.3 (emphasis added).

In addition to operating its own dating websites, Defendant allows individuals and businesses to become "private label partners" (hereafter, "affiliate partners") by creating new online dating websites for niche audiences.  RJN Ex. 1C; FAC Ex. E.  Specifically, an affiliate partner obtains a domain name and then contracts with the Defendant to help generate the affiliate dating site (hereafter "affiliate site") at that domain name. FAC ¶¶ 17–19.  Defendant provides the affiliate partner with dating software, hosting, payment processing, customer support, and the ability for the affiliate partner's users to view user profiles in Defendant's central membership database. *Id.*  Defendant's network of affiliated sites serves a diverse set of communities and the affiliate sites have domain names such as Blackpoz.com, HivAidsDating.com, HIVGayMen.com, AllLifestyle4BBW.com, ChristianSafeHaven.com, and STDHookup.com among others *Id.* ¶ 2. Because Defendant manages a single database of member information for all of its sites, a member who registers with an affiliate site can view the profile information of any PositiveSingles.com member on the affiliate site. *Id.*  Therefore, the profile of that member who registered for PositiveSingles.com could be viewed by members of not only PositiveSingles.com, but also by members of the various affiliated sites. *Id.*; FAC Exhs. A–C.

Plaintiffs allege that Defendant fraudulently and deceptively failed to disclose that profiles created through PositiveSingles.com could be viewed on Defendant's affiliate sites.  FAC ¶¶ 36–38.  Plaintiffs allege that to users, PositiveSingles.com appears to be a stand-alone website. *Id.* ¶¶ 22, 38.  Plaintiffs contend that Defendant induced consumers to sign up for its dating service by misrepresenting the privacy of their information with statements such as "100% Confidential and Comfortable Community" and "[Defendant does] not disclose, sell or rent any personally

3

Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

identifiable information to any third party organizations." *Id.* ¶¶ 13–14. Plaintiffs further allege that even if members were generally aware of the existence of Defendant's affiliate sites, it is not possible for a member to determine exactly how many and what type of sites are associated with PositiveSingles.com. *Id.* ¶ 23. Plaintiffs allege that Defendant had exclusive knowledge of the number and nature of the affiliate sites and actively concealed the number and nature of affiliated sites from Plaintiffs. *Id.* ¶¶ 36–37. Plaintiffs allege that they relied on the representations on PositiveSingles.com in purchasing memberships. *Id.* ¶¶ 38,40. Plaintiffs allege that they would not have paid for PositiveSingles.com memberships in the amounts of $179.85 by Jane Doe 1 and $527.45 by Jane Doe 2 if Plaintiffs had known that their profiles would be available on all of Defendant's affiliate sites. *Id.* ¶ 40.

### B. Procedural History

Plaintiffs filed an original Complaint against Defendant on July 19, 2013, alleging two causes of action. ECF No. 1. Plaintiffs alleged that Defendant violated multiple provisions of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq. ECF No. 1 ¶¶ 47–57. Plaintiffs also alleged that Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq., which is predicated in part upon the violations of the CLRA. *Id.* ¶¶ 32–40. Plaintiffs originally brought this putative class action on behalf of the following proposed class:

> All persons who registered for use of the PositiveSingles.com website or any other website indicating that it was "Powered by PositiveSingles.com" during the four year period prior to the filing date of this complaint, excluding residents of California.

*Id.* ¶ 26. The complaint follows a similar suit brought against Defendant in Santa Clara County Superior Court, *John Doe v. PositiveSingles.com et al.*, 111–CV–211208.[1] *See* RJN. The plaintiff in that case brought claims on behalf of a class of California residents who registered with PositiveSingles.com or any of Defendant's affiliate sites. *Id.* at 7. Here, in contrast, Plaintiffs seek redress for non-California residents who use Defendant's services.

---

[1] In *John Doe,* the Superior Court overruled Defendant's demurrer, denied Defendant's motion for summary judgment, and granted class certification. *See* ECF No. 20–1.

4

Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

1    Defendant filed a motion to dismiss on December 2, 2013 along with a motion to strike

2 Plaintiffs' nationwide class allegations. ECF No. 16. This court granted the motion to dismiss

3 with leave to amend because Plaintiffs had not pled facts with sufficient particularity. ("April 16,

4 2014 Order"), ECF No. 25. This court further denied the motion to strike as premature. *Id.*

5    Plaintiffs filed their FAC on May 1, 2014 alleging the same causes of action as in the

6 original Complaint with additional supporting facts. On July 24, 2014, Defendant filed a motion to

7 dismiss the FAC, along with a request for judicial notice of the complaint filed in the parallel

8 California case, 111–CV–211208.[2] Mot; RJN at 1. Plaintiffs filed their opposition on August 15,

9 2014, and Defendant responded with its reply on August 28, 2014.

## II.  LEGAL STANDARDS

### A. Motion to Dismiss Under Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as

---

[2] While a district court generally may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion, a court may take judicial notice of documents referenced in the complaint, as well as matters in the public record, without converting a motion to dismiss into one for summary judgment. *See Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001). A matter may be judicially noticed if it is either "generally known within the territorial jurisdiction of the trial court" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Proper subjects of judicial notice when ruling on a motion to dismiss include pleadings in other relevant proceedings. *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007). Defendant requests that the Court take judicial notice of the complaint and supporting exhibits filed in *John Doe v. PositiveSingles.com,* a proceeding in Santa Clara County Superior Court alleging identical UCL and CLRA violations against Defendant on behalf of a different class. RJN at 2. Plaintiffs support Defendant's request for judicial notice. Opp. at 2–3. In accordance with the principles discussed above, the Court GRANTS Defendant's request for judicial notice.

5
Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court need not accept as true allegations contradicted by judicially noticeable facts, and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.), *cert. denied*, 516 U.S. 964 (1995); *see Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nor is the Court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (internal quotation marks and citations omitted); *accord Iqbal*, 556 U.S. at 663–64.

### B. Rule 9(b) Pleading Requirements

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam). The plaintiff must set forth "what is false or misleading about a statement, and why it is false." *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001).

**C. Leave to Amend**

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). When dismissing a complaint for failure to state a claim, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id.* at 1130 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (internal quotation marks omitted)). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

**III.   DISCUSSION**

Defendant seeks to dismiss Plaintiff's FAC for the following reasons: (1) failure to sufficiently plead reliance and economic injury as a result of the alleged fraudulent misconduct; (2) failure to state a claim under the unfair prong of the UCL; (3) failure to state a claim under the unlawful prong of the UCL and; (4) lack of unconscionability for the CLRA claim. Mot. at 3–20; Reply. For the reasons stated below, the Court finds that Plaintiffs have sufficiently alleged claims for relief under the UCL and CLRA, but have failed to satisfy Rule 9(b)'s heightened pleading standard. The Court therefore GRANTS the motion to dismiss in full and declines to address Defendant's remaining bases for dismissal. The Court begins by discussing the legal standard for reliance and injury under the UCL and CLRA and then applies those standards to the allegations in the FAC.

**A. Standing Under the UCL and CLRA**

The UCL broadly prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The CLRA prohibits a host of unfair and deceptive practices, including various forms of misrepresentation. *See* Cal. Civ. Code § 1770. Both the UCL and the

7

CLRA prohibit not only affirmative misrepresentations, but also material omissions that deceive reasonable consumers. *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 925 (N.D. Cal. 2012).

Both the CLRA and the UCL require Plaintiffs to demonstrate standing. A plaintiff may bring a claim under the CLRA so long as she "suffer[ed] any damage as a result of" a proscribed practice under the CLRA. Cal. Civ. Code § 1780(a). This means that to adequately plead a CLRA claim, a plaintiff must allege that she relied on the defendant's alleged misrepresentation and that she suffered economic injury as a result. *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 697 (Cal. Ct. App. 2010).

Similarly, under the UCL, a plaintiff must demonstrate that she "suffered injury in fact and [ ] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.[3] Interpreting this statutory language, California courts have held that when the "unfair competition" underlying a plaintiff's UCL claim consists of a defendant's misrepresentation, a plaintiff must have actually relied on the misrepresentation, and suffered economic injury as a result of that reliance, to have standing to sue. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (Cal. 2009). California courts have subsequently extended the actual reliance requirement to claims brought under the UCL's unlawful prong to the extent "the predicate unlawful conduct is based on misrepresentations." *Durell*, 108 Cal. Rptr. 3d at 687–88; *accord Kwikset Corp. v. Superior Court*, 246 P.3d 877, 888 (Cal. 2011). Moreover, in *Kwikset Corp. v. Superior Court*, the California Supreme Court suggested that the actual reliance requirement applies whenever the underlying misconduct in a UCL action is fraudulent conduct. *See Kwikset*, 246 P.3d at 888. In line with this authority, this Court has concluded "that the actual reliance requirement also applies to claims under the UCL's unfair prong to the extent such claims are based on fraudulent conduct." *See Kane v. Chobani, Inc.*, No. 12–2425, 2013 WL 5289253, at *6 (N.D. Cal. Sept. 19, 2013). Accordingly, the Court has consistently required allegations of actual reliance and injury at the pleading stage for claims under all three prongs of the UCL where such claims are premised on

---

[3] A plaintiff who has standing under the UCL's "lost money or property" requirement will have suffered the requisite "damage" for purposes of establishing CLRA standing. *Hinojos v. Kohl's Corp.,* 718 F.3d 1098, 1108 (9th Cir. 2013).

8

Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

misrepresentations. *See Kane v. Chobani, Inc.*, No. 12–2425, 2014 WL 657300, at *5 (N.D. Cal. Feb. 20, 2014).

This showing of actual reliance under the UCL requires a plaintiff to allege that "the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." *Tobacco II*, 46 Cal. 4th at 326 (internal quotation marks omitted). "A plaintiff may establish that the defendant's misrepresentation is an immediate cause of the plaintiff's conduct by showing that in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." *Id.* (internal quotation marks omitted). While a plaintiff need not demonstrate that the defendant's misrepresentations were "the sole or even the predominant or decisive factor influencing his conduct," the misrepresentations must have "played a substantial part" in the plaintiff's decisionmaking. *Id.*

For a plaintiff to bring UCL and CLRA claims on the basis of omissions, the omission must either be "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Donohue*, 871 F. Supp. 2d at 925 (quoting *Baltazar v. Apple, Inc.*, No. 10-3231, 2011 WL 588209, at *4 (N.D. Cal. Feb. 10, 2011)). One California Court of Appeal has held that there are four circumstances in which a failure to disclose a fact can constitute fraud or deceit:

> (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.

*Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588, 593 (Cal. Ct. App. 2011).[4] To establish the causal nexus between the omission and a plaintiff's harm, a plaintiff must plead that she would not

---

[4] The Court notes that the California Courts of Appeal are split on whether these factors—which are outlined in *Limandri v. Judkins*, 60 Cal. Rptr. 2d 539 (Cal. Ct. App. 1997), a fraudulent concealment case—properly apply to UCL and CLRA omission claims. *Compare Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588 (Cal Ct. App. 2011), *with Buller v. Sutter Health*, 74 Cal. Rptr. 3d 47, 52 n.3 (Cal. Ct. App. 2008) ("respectfully disagree[ing]" with the application of the *Judkins* factors to UCL and CLRA omission claims to the extent that they compel a duty to disclose). However, since both parties adopt the *Collins* test in their briefs, the applicable standard is not decided in this ruling. *See generally Donohue*, 871 F. Supp. 2d at 925 n.5 (declining to consider a limitation on liability under the CLRA and UCL since "neither party has addressed [the issue] and [defendant] has not moved to dismiss on this ground").

9

Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

have purchased the product or service at issue if she had known the material fact that Defendant allegedly omitted. *See Kwikset*, 246 P.3d at 888; *Donohue*, 871 F. Supp. 2d at 920.

In the instant case, Plaintiffs contend that Defendant has violated the UCL through both affirmative misrepresentations regarding the privacy of users' profiles on PositiveSingles.com and through the omission of material facts regarding the sharing of information across the various SuccessfulMatch affiliate websites. FAC ¶¶ 33, 36–39. In particular, Plaintiffs allege that Defendant fraudulently misrepresented the sharing of confidential member information and the nature of the sites that would display that information. *Id.* ¶¶ 20–23. In addition, Plaintiffs contend that these same misrepresentations and omissions violate the CLRA. *Id.* ¶¶ 46, 52. Plaintiffs contend that these misrepresentations and omissions induced Plaintiffs, and other individuals with STDs, to pay SuccessfulMatch for the services of the PositiveSingles.com website, and that without those misrepresentations and omissions, Plaintiffs would not have paid for PositiveSingles.com memberships. *Id.* ¶¶ 1–2,11–15,40, 46. Plaintiffs finally contend that Defendant has violated the unlawful prong of the UCL, which incorporates violations of other statutes, because Defendant has violated the CLRA. *Id.* ¶ 33.

### A. Reliance

Defendant argues that Plaintiffs have failed to plead reliance, an essential element of standing, under the UCL and CLRA because (1) the PostiveSingles.com website disclosed its profile sharing, (2) there was no duty to disclose, (3) the statements were mere puffery, and (4) Defendant's conduct falls within the safe harbor of the California Online Privacy Protection Act. As a result, Defendant argues Plaintiffs cannot raise a claim for fraudulent conduct under either the UCL or CLRA. The Court addresses each argument in turn.

The reliance standard under the UCL and CLRA is the "reasonable consumer" test, which requires a plaintiff to show that members of the public are likely to be deceived by the business practice or advertising at issue. *See Williams v. Gerber Prods.*, 552 F.3d 934, 938 (9th Cir. 2008). California courts have indicated that whether a business practice is deceptive is a question of fact, typically not appropriate for demurrer. *Linear Tech. Corp. v. Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221, 236 (Cal. Ct. App. 2007) ("Whether a practice is deceptive, fraudulent, or unfair is

1  generally a question of fact which requires 'consideration and weighing of evidence from both
2  sides' and which usually cannot be made on demurrer." (quoting *McKell v. Washington Mut., Inc.*,
3  49 Cal. Rptr. 3d 227, 240 (Cal. Ct. App. 2006))).  The Court finds these cases instructive here,
4  where Plaintiffs have sufficiently alleged the likelihood that a reasonable consumer would be
5  deceived by Defendant's representations and omissions.

6  First, Defendant argues that a reasonable consumer would not likely be deceived by the
7  alleged misrepresentations and omissions because SuccessfulMatch disclosed its profile sharing.
8  Mot. at 5, 17.  The Terms and Services Agreement states that "profiles may be shared with other
9  sites within the SuccessfulMatch Network." RJN Ex. 1A.3.  However, Plaintiffs do not just claim
10 deception regarding profile sharing generally.  Instead, Plaintiffs allege that the misrepresentations
11 also implicate how member profiles are portrayed on the affiliate websites, and the nature of the
12 main site-affiliate site relationship.  FAC ¶¶ 21–23.  Defendant does not explain how its statement
13 that "profiles may be shared with other sites within the SuccessfulMatch Network" discloses the
14 number and types of "other sites" within the network, or the nature of the main site-affiliate site
15 relationship.  Plaintiffs raise a question of fact whether a reasonable consumer would likely be
16 deceived that the "SuccessfulMatch Network" includes a potentially infinite number and variations
17 of affiliate sites since those affiliate sites are not explicitly identified or described, and
18 PositiveSingles.com uses the terms "exclusive," "privacy," and "100% Confidential" to describe
19 the service.  FAC ¶¶ 11,13.  Plaintiffs allege that these representations and the layout of the website
20 "emphasize[] it is a unique and exclusive location," such that a reasonable consumer could
21 reasonably believe his or her profile would be limited to that site.  In light of Plaintiffs' factual
22 allegations, the Court finds it would be inappropriate to resolve whether a reasonable consumer
23 would be deceived on a motion to dismiss.  *See Linear Tech. Corp.*, 61 Cal. Rptr. 3d  at 236.

24 Defendant cites *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995), for the proposition
25 that a reasonable consumer is unlikely to be deceived where there is a disclosure.  Mot. at 6.
26 *Freeman* involved a million-dollar sweepstakes mailing promotion with emphasized large print
27 accompanied by qualified small print, where the complaint was dismissed because of the
28 disclosures in small print.  *Freeman*, 68 F.3d at 289.  While the disclosure in *Freeman* was in

11
Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

1  smaller print, there was no dispute that the disclosure "expressly and repeatedly state[d] the

2  conditions" of the sweepstakes. In contrast, the Plaintiffs here contest whether the limited

3  disclosure in the Terms and Services Agreement expressly disclosed under what conditions profiles

4  would be portrayed on affiliate sites, which affiliate sites were eligible for profile sharing, or any

5  information regarding the nature of the main site-affiliate site relationship. The disclosure in

6  *Freeman* was unambiguous, express, and clear on its face. *See id.* at 289–90. The Court cannot

7  find, at this stage of the proceedings, that Defendant's disclosure is so unambiguous and express

8  such that a reasonable consumer is unlikely to be deceived as a matter of law.

9        Defendant also cites a string of cases in support of its argument that disclosure defeats any

10  claim of misleading or deceptive practices. Mot. at 6 (citing *Hager v. Vertrue, Inc.*, No. 09-11245-

11  GAO, 2011 WL 4501046, at *6 (D. Mass. Sept. 28, 2011); *Berry v. Webloyalty.com, Inc.*, No. 10-

12  CV-1358-H CAB, 2011 WL 1375665, at *4–*7 (S.D. Cal. Apr. 11, 2011), *vacated and remanded*,

13  517 F. App'x 581 (9th Cir. 2013); *Hook v. Intelius, Inc.*, No. 5:10-CV-239 MTT, 2011 WL

14  1196305, at *9–*10 (M.D. Ga. Mar. 28, 2011); *Baxter v. Intelius, Inc.*, No. SACV09-1031 AG

15  MLGX, 2010 WL 3791487 (C.D. Cal. Sept. 16, 2010); *In re Vistaprint Corp Mktg. & Sales*

16  *Practices Litig.*, No. MDL 4:08-MD-1994, 2009 WL 2884727, at *4–*8 (S.D. Tex. Aug. 31,

17  2009), *aff'd sub nom. Bott v. Vistaprint USA Inc.*, 392 F. App'x 327 (5th Cir. 2010)). These cases

18  are inapposite for two reasons. First, unlike Defendant's disclosure, the disclosures in these cases

19  were present on the same page and in close proximity to the agreement button, providing clear

20  notice. *See, e.g.*, *Berry.*, 2011 WL 1375665, at *4 ("[T]he explicit and repeated disclosures that

21  Defendants made in their enrollment page suffices to defeat the misrepresentation claims.");

22  *Hager*, 2011 WL 4501046, at *5 (clear, understandable terms in close proximity to location where

23  consumer indicates agreement to terms). Second, and more importantly, the disclosures

24  themselves fully revealed the claimed deception, whereas here Plaintiffs argue there were material

25  omissions regarding the breadth of profile sharing and the nature of the main site-affiliate site

26  relationship. *See, e.g.*, *Hook*, 2011 WL 1196305, at *9 ("The nature of the [challenged practices]

27  were disclosed to the Plaintiff several times before he completed his transaction."); *Baxter*, 2010

28  WL 3791487, at * 4 ("Defendants disclosed the full terms of the newly offered membership in the

12

Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

Offer Details section. It is located next . . . to the button for "YES, And show my report."). Unlike these cases, Defendant's single limited and qualified disclosure, located on a different page from the acceptance button, does not defeat Plaintiff's misrepresentation claims as a matter of law.

Second, Defendant contends it had no duty to disclose the omitted information. Mot. at 13, 17. However, Plaintiffs have sufficiently alleged a duty to disclose under the second and fourth *Collins* factors.[5] *See Collins*, 134 Cal. Rptr. 3d at 593. Under the second factor, a defendant has a duty to disclose "when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff . . . ." Plaintiffs allege Defendant had exclusive knowledge of the number and nature of affiliate websites. FAC ¶ 36. Plaintiffs also allege that this information was material to Plaintiffs' purchases of Defendant's services since they would not have purchased memberships if they had "known that their information was to be available on all of the websites . . . affiliated with PositiveSingles.com at any given time." *Id.* ¶ 40; *see Collins*, 134 Cal. Rptr. 3d at 594 (finding a fact is material if a reasonable consumer would "deem it important in determining how to act in the transaction at issue"). Moreover, Plaintiffs allege this information is unavailable and that they requested information regarding the affiliate sites from Defendant, but were refused. *Id.* ¶ 37. These allegations sufficiently allege the second factor under *Collins* for a duty to disclose.

Plaintiffs also sufficiently allege a duty to disclose under the fourth *Collins* factor. *See Collins*, 134 Cal. Rptr. 3d at 593 (". . . when the defendant makes partial representations that are

---

[5] Plaintiffs' conclusory allegation that Defendant "actively concealed" information is insufficient to plead the third *Collins* factor. *See* FAC ¶ 37. Nondisclosure by itself does not constitute active concealment. *See, e.g.*, *Gray v. Toyota Motor Sales, U.S.A.*, No. CV 08-1690 PSG JCX, 2012 WL 313703 (C.D. Cal. Jan. 23, 2012), *aff'd sub nom.*, 554 F. App'x 608 (9th Cir. 2014); *Alfaro v. Cmty. Hous. Improvement Sys. & Planning Ass'n, Inc.*, 124 Cal. Rptr. 3d 271, 295 (Cal. Ct. App. 2009). Rather, Plaintiffs must allege Defendant took affirmative acts to conceal material information. *See Lingsch v. Savage*, 29 Cal. Rptr. 201, 204 (Cal. Ct. App. 1963). Plaintiffs allege that Defendant refused to disclose the full list of affiliate sites after Jane Doe 2 discovered the existence of some affiliate sites. However, Plaintiffs do not specify whether Jane Doe 2 requested the information before or after purchasing Defendant's service or how or when she discovered the other affiliate sites. FAC ¶ 37. Plaintiffs' allegation is insufficient. Plaintiffs' failure to specifically plead the circumstances of this alleged active concealment is also material to their failure to adequately plead economic injury.

misleading because some other material fact has not been disclosed."). Plaintiffs allege that Defendant made partial representations that were misleading due to other facts not disclosed, and identify specific representations and omissions. FAC ¶ 39. Specifically, Plaintiffs argue that the claim their profiles "*may* be shared on other sites within the SuccessfulMatch Network" is a misleading partial fact since the sharing *would* always in fact happen, would involve up to a thousand unidentified websites, and would be shared on websites that could not reasonably be anticipated. FAC Exh. B, Terms & Conditions of Service, at 1 (emphasis added); FAC ¶ 39. Taking Plaintiffs' factual allegations as true, this is the type of disclosure that would trigger a duty to disclose. *See, e.g.*, *Boschma v. Home Loan Ctr., Inc.*, 129 Cal. Rptr. 3d 874, 879, 890–92 (Cal. Ct. App. 2011) (failure to disclose that plaintiffs "*would* suffer negative amortization" where defendant disclosed it was a possibility triggered duty to disclose). As discussed above, Plaintiffs allege that had they known their profiles would always be shared on an unknown number of affiliate sites, they would not have purchased Defendant's service. These allegations therefore sufficiently allege misleading partial representations and omissions of material fact under the fourth *Collins* test.

Third, Defendant argues that the allegedly deceptive statements were mere puffery and that Plaintiffs have not identified what is false in any of the identified statements. Mot. at 10–11, 15–17. The UCL and CLRA prohibit not only advertising "which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (Cal. 2002). Moreover, even puffery may "contribute[]. . . to the deceptive context . . . as a whole." *Williams*, 552 F.3d at 939 n.3 (declining to give defendant the "benefit of the doubt" that mere puffery could not deceive a reasonable consumer). As discussed above, the Court finds that Plaintiffs have sufficiently alleged that the challenged statements were misleading in light of either unavailable or partially omitted material facts. In light of that conclusion, the Court declines to discount the effect even "mere puffery" might have had in light of Defendant's failure to disclose.

14
Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

Fourth, Defendant argues that its privacy policy complies with the California Online Privacy Protection Act ("CalOPPA")[6], and Plaintiffs' UCL and CLRA claims cannot invade that statutory safe harbor. Mot. at 12 (citing *Loeffler v. Target Corp.*, 58 Cal. 4th 1081 (Cal. 2014)). Under CalOPPA, a "commercial Web site or online service that collects personally identifiable information through the Internet about individual consumers residing in California who use or visit its commercial Web site or online service shall conspicuously post its privacy policy on its Web site. . . ." Cal. Bus. & Prof. Code § 22575. The safe harbor doctrine precludes UCL actions where another statute "actually bar[s] the action or *clearly permit*[s] the conduct." *Loeffler*, 58 Cal. 4th at 1125 (internal quotation marks and citation omitted). Defendant has cited no provision in CalOPPA that bars liability. *See, e.g.*, *id.* (noting litigation privilege as an example of a statutory bar to liability). Moreover, contrary to Defendant's characterization of CalOPPA, no provision of the statute "expressly permit[s]" Defendant to omit certain information from its disclosure. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1167 (9th Cir. 2012) (denying safe harbor where no provision "affirmatively permit[ted] the absence of . . . [a certain] disclosure from the advertisements"). Under the safe harbor doctrine, "[i]t is not enough if [the statute] merely fail[s] to prohibit such an omission . . . [it must] clearly permit[] the omission . . . ." *Id.* Defendant does not contend that CalOPPA expressly permits its omission of information regarding the extent and nature of its profile sharing with affiliate sites. Accordingly, Defendant's safe harbor claim fails.

In summary, the Court concludes that Plaintiffs have plausibly alleged claims for relief under the UCL and CLRA. However, while Plaintiffs have raised plausible claims for relief under Rule 8(a), as discussed below, the Court finds that Plaintiffs have failed to meet the heightened pleading standard under Rule 9(b).

### B. Economic Injury

Under the UCL, only those who have both suffered injury in fact and lost money or property as a result of the alleged unfair competition may bring suit. Cal. Bus. & Prof. Code § 17204; *see Rubio v. Capital One Bank,* 613 F.3d 1195, 1203–04 (9th Cir. 2010); *Lozano v.*

---

[6] Not to be confused with the federal Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. § 6501-6506.

15
Case No.: 13-CV-03376-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

1  *AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731–32 (9th Cir. 2007); *Peterson v. Cellco P'ship*, 80

2  Cal. Rptr. 3d 316, 321 (Cal. Ct. App. 2008). If Plaintiffs cannot allege both that they suffered

3  injury in fact and that they lost money or property as a result of an unlawful, unfair, or fraudulent

4  business practice, then they lack statutory standing to sue under the UCL. *Peterson*, 80 Cal. Rptr.

5  3d at 321; *accord Rubio*, 613 F.3d at 1203; *Kwikset*, 246 P.3d at 886. Any showing of standing

6  under UCL establishes sufficient damages under the CLRA. *Hinojos*, 718 F.3d at 1108.

7        Defendant argues that Plaintiffs have not suffered an injury in fact due to an alleged unfair,

8  unlawful, or deceptive business practice. Mot. at 13. Defendant acknowledges Plaintiffs'

9  allegations that Plaintiffs paid money to SuccessfulMatch for online memberships. *Id.* However,

10  Defendant argues that Plaintiffs received the full range of promised online dating services in

11  exchange for their payments and therefore lost no money from the alleged misrepresentations, and

12  have instead only alleged emotional harm from seeing their profiles on affiliate sites. *Id.* at 13–14.

13  Defendant attempts to use a "benefit of the bargain" defense, however, that defense applies only

14  where the misrepresentation was not "material" to the consumer. *See Hinojos*, 718 F.3d at 1107

15  (citing *Kwikset*, 120 Cal. Rptr. 3d at 759–60). Plaintiffs allege that they would not have made the

16  purchases but for the misrepresentations. FAC ¶ 40. Defendant does not contend that its profile

17  sharing practices would not be material to a reasonable consumer, and as a general matter, the

18  "materiality of a misrepresentation is typically an issue of fact, and therefore should not be decided

19  at the motion to dismiss stage." *Hinojos*, 718 F.3d at 1107 n.7 (citing *In re Steroid Hormone Prod.*

20  *Cases*, 104 Cal. Rptr. 3d 329, 338–39 (2010). As such, Defendant's "benefit of the bargain"

21  defense fails.

22        However, Defendant also challenges the particularity with which Plaintiffs have pled

23  economic injury and reliance, noting that the Plaintiffs do not specify when, how, or under what

24  circumstances Plaintiffs made their purchases of PositiveSingles.com services. Mot. at 3. As

25  noted in the Court's April 16, 2014 Order, "[a]verments of fraud must be accompanied by 'the

26  who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*,

27  317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.

28

1997)). Because Plaintiffs' claims sound in fraud, their allegations must satisfy the particularity requirement of Rule 9(b). *See Kearns*, 567 F.3d at 1125.

Plaintiffs have failed to "explicitly aver 'the who, what, when, where, and how'" of Defendant's alleged fraudulent conduct. *In re Actimmune Mktg. Litig.*, No. 08-02376, 2010 WL 346 3491, at *9 (N.D. Cal. Sept. 1, 2010). Plaintiffs plead that they "saw and relied on the representations set forth in paragraphs 11-13," and that they "would not have paid for . . . memberships had they known that their information" would be shared. FAC ¶¶ 38, 40. However, nowhere in the FAC do Plaintiffs allege when they saw the specified representations, when they purchased Defendant's services, or when they discovered Defendant's allegedly fraudulent conduct. Defendant provides free and paid memberships. Mot. at 3. Thus, if Plaintiffs did not see the specified representations before they purchased Defendant's services, then Plaintiffs did not rely on these representations and suffered no injury. If Plaintiffs relied on Defendant's representations but paid nothing for Defendant's services, then Plaintiffs may not have suffered any economic injury. If Plaintiffs purchased or continued to purchase Defendant's services after discovering Defendant's allegedly fraudulent conduct, then Plaintiffs may have no claim under either the UCL or the CLRA. Thus, without any allegation as to when Plaintiffs saw Defendant's representations, when Plaintiffs purchased Defendant's services, and when Plaintiffs discovered Defendant's allegedly fraudulent conduct, Defendant is unable to actually "defend against the charge and not just deny that [it has] done anything wrong." *Semegen*, 780 F.2d at 731; *see, e.g.*, *Bruton v. Gerber Prods. Co.*, No.12-2412, 2014 WL 17211, at *13 (N.D. Cal. Jan. 15, 2014) (allegations that plaintiff purchased defendant's products throughout the class period were "sufficient to place [defendant] on notice as to the time period in which [plaintiff's] allegations arise"); *Werdebaugh v. Blue Diamond Growers*, 12-2724, 2013 WL 5487236, at *14–15 (N.D. Cal. Oct. 2, 2013).

Plaintiffs' FAC does not meet the heightened pleading standard required under Rule 9(b). As such, the Court has no choice but to grant Defendant's motion to dismiss. However, because the Court finds that Plaintiffs have alleged plausible claims for relief, the Court finds that amendment would not be futile. Plaintiffs' claims are therefore dismissed without prejudice. *See*

*Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

### IV.     CONCLUSION

For the reasons discussed above, the Court GRANTS Defendant's motion to dismiss Plaintiffs' UCL and CLRA claims for failure to meet Rule 9(b)'s heightened pleading standard. This dismissal is without prejudice.

Should Plaintiffs elect to file a Second Amended Complaint curing the deficiencies identified herein, Plaintiffs shall do so within 14 days of the date of this Order. Failure to meet the fourteen-day deadline to file a Second Amended Complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice. Plaintiffs may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated:         September 30, 2014            _____
                                             LUCY H. KOH
                                             United States District Judge